UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/10/15
```

ERIC RUBENSTEIN, AARON SEGAL,
SCOTT CARDONE, and DAVID
LANDSKOWSKY,

                        Plaintiffs/Petitioners,

      - against -

ADVANCED EQUITIES, INC., BYRON
CROWE, DWIGHT BADGER, and KEITH
DAUBENSPECK,

                        Defendants/Respondents.

**MEMORANDUM
OPINION & ORDER**

13 Civ. 1502 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Petitioners Eric Rubenstein, Aaron Segal, Scott Cardone, and David Landskowsky are former employees of Respondent Advanced Equities, Inc. ("AEI"), a broker-dealer subject to the Financial Industry Regulatory Authority ("FINRA"). Respondents Byron Crowe, Dwight Badger, and Keith Daubenspeck are former officers and directors of Advanced Equities Financial Corporation ("AEFC"), the parent company of AEI.

        The parties submitted to a FINRA arbitration panel a dispute arising out of Petitioners' employment agreements with AEI. (Roth Aff. (Dkt. No. 1) Ex. 3) The arbitrators found in favor of Respondents. (Id. Ex. 2) Petitioners then moved for an order vacating the arbitration award (Dkt. No. 1), while Respondents cross-moved for an order confirming the award. (Dkt. No. 8) This Court denied Petitioners' motion to vacate and granted Respondents' motion to confirm the arbitration award. (Dkt. No. 17)

        This Court also granted Respondents "an award reflecting reasonable attorneys' fees and costs incurred in connection with the [cross-]motions." (Id. at 35) The parties were

directed to submit additional briefing addressing "[t]he appropriate amount of that award." (Id.) The parties have made supplemental submissions, and this Court will now rule on this issue.

## BACKGROUND

### I. THE CONTRACT DISPUTE

Headquartered in Chicago, AEI is a registered broker-dealer specializing in late-stage private equity financing. (Pet. Mot. to Vacate Br. (Dkt. No. 1) at 4; Resp. Mot. to Confirm Br. (Dkt. No. 10) at 4) In 2006, AEI opened a New York office and began recruiting brokers to join that office, including Tim Herrmann and Todd Harrigan.[1] (Pet. Mot. to Vacate Br. (Dkt. No. 1) at 4; Resp. Mot. to Confirm Br. (Dkt. No. 10) at 5) During the recruitment process, Herrmann and Harrigan met with AEI's President – Jeff Fisher – and with Respondents Daubenspeck and Badger. (Pet. Mot. to Vacate Br. (Dkt. No. 1) at 4-5) On November 16, 2006, Herrmann and Harrigan entered into employment agreements with AEI. (Id.; Resp. Mot. to Confirm Br. (Dkt. No. 10) at 5)

Herrmann and Harrigan spoke with Petitioners Rubenstein, Landskowsky, and Cardone about joining AEI's New York office. (Pet. Mot. to Vacate Br. (Dkt. No. 1) at 6, 10; Resp. Mot. to Confirm Br. (Dkt. No. 10) at 5) In January 2007, Rubenstein, Landskowsky, and Cardone began talking with Fisher about that possibility. (Pet. Mot. to Vacate Br. (Dkt. No. 1) at 10) Rubenstein also met with Respondents Daubenspeck, Badger, and Crowe in Chicago to discuss AEI's proposed terms of employment. (Id.) On March 30, 2007, Rubenstein, Landskowsky, and Cardone entered into employment agreements with AEI and joined its New York office. See Roth Aff. (Dkt. No. 1) Exs. 5, 6, 9.

---

[1] Herrmann and Harrigan were claimants in the FINRA arbitration proceeding but are not parties to this action. See Roth Aff. (Dkt. No. 1) Ex. 3.

2

In November 2006, Fisher recruited Petitioner Segal at a series of meetings, some of which took place at AEI's New York office. (Pet. Mot. to Vacate Br. (Dkt. No. 1) at 7) On January 8, 2007, Segal entered into an employment agreement with AEI and joined its New York office. See Roth Aff. (Dkt. No. 1) Ex. 8.

In their employment agreements, each Petitioner agreed to execute a promissory note, pursuant to which AEI would make a loan to Petitioners that would be forgiven over the first five years of their employment at AEI. See Roth Aff. (Dkt. No. 1) Exs. 5, 6, 8, 9. Rubenstein, Landskowsky, and Cardone's agreements provide that

> [i]n the event that (i) Advanced Equities terminates [Petitioner's] employment or registration with Advanced Equities for Cause, as defined below or (ii) [Petitioner] voluntarily terminates his employment or registration with Advanced Equities, in either case, at any time prior to full and final satisfaction of [the] Note, the then outstanding balance (both principal and interest) under [the] Note shall immediately become due and payable without notice, protest, presentment or demand and no further forgiveness shall occur.

(Id. Exs. 5, 6, 9)

Segal's employment agreement likewise provides for a loan that would be forgiven over a five-year period. See id. Ex. 8. Segal's promissory note states that

> [n]otwithstanding anything contained herein to the contrary, in the event that [Petitioner's] employment or registration with Advanced Equities is terminated for any reason whatsoever or no reason at all, by [Petitioner] or by Advanced Equities, in any case at any time prior to the full and final satisfaction of this Note . . . the then outstanding balance (both principal and interest) under this Note shall immediately become due and payable without notice, protest, presentment, or demand and no further forgiveness shall occur.

(Elisofon Decl. (Dkt. No. 9) Ex. 38) Each Petitioner's employment agreement states that the accompanying promissory note's "terms [are] incorporated" in the contract. (Roth Aff. (Dkt. No. 1) Exs. 5, 6, 8, 9) The promissory notes provide that Petitioners will be liable for "any and all of the holder's costs in connection with the enforcement and collection [of unpaid amounts

3

due], including without limitation any and all attorneys' fees." (Elisofon Decl. (Dkt. No. 9) Exs. 38-40)

## II. THE ARBITRATION

On February 19, 2010, Petitioners – along with Herrmann and Harrigan – initiated a FINRA arbitration proceeding against the Respondents and AEFC, asserting claims for breach of contract, breach of FINRA rules, unjust enrichment, breach of the covenant of good faith and fair dealing, fraud, constructive discharge, constructive trust, conversion, violations of the New York Civil Rights Law, and unfair competition.[2] (Roth Aff. (Dkt. No. 1) Ex. 3)

Respondent AEI counterclaimed for breach of contract, breach of fiduciary duty, unfair competition, and misappropriation of trade secrets. (Roth Aff. (Dkt. No. 1) Ex. 2)

The arbitration proceedings took place in New York. Three arbitrators conducted twelve pre-hearing sessions and sixty hearing sessions that took place over thirty-two days. (Id. Ex. 2) The arbitrators heard testimony from twenty-two fact witnesses and three expert witnesses. (Id. Ex. 2 ¶ 3)

After Petitioners presented their case-in-chief, Respondents and AEFC moved to dismiss all claims. On April 19, 2012, the arbitrators granted the motion as to most of

---

[2] Petitioners' employment agreements provide that any dispute between them and AEI that "cannot be settled by the parties within a reasonable time will be arbitrated before the offices of the NASD Dispute Resolution in accordance with Employee's Form U-4 and NASD rules. Venue for the proceeding will be determined pursuant to the NASD Code of Arbitration Procedure and the rules and procedures of NASD Dispute Resolution." See Roth Aff. (Dkt. No. 1) Exs. 5, 6, 8, 9. "NASD changed its corporate name to FINRA on July 30, 2007." Fiero v. Fin. Indus. Regulatory Auth., Inc., 606 F. Supp. 2d 500, 504 (S.D.N.Y. 2009), rev'd on other grounds, 660 F.3d 569 (2d Cir. 2011). After Petitioners submitted their statements of claim, the parties agreed that FINRA's rules would govern the arbitration proceeding. See Elisofon Decl. (Dkt. No. 9) Ex. 4; Roth Aff. (Dkt. No. 1) Ex. 2.

4

Petitioners' claims, including as to all claims against the individual Respondents. (Roth Aff. (Dkt. No. 1) Ex. 37) Only Petitioners' claims for breach of contract related to compensation for AEFC stock options, and commissions and bonus compensation allegedly owed by AEI, survived the motion to dismiss. (Id.)

On December 6, 2012, after the close of all the evidence, the arbitrators denied Cardone, Landskowsky, Rubenstein, Harrigan, and Herrmann's claims in their entirety. (Roth Aff. (Dkt. No. 1) Ex. 2 at 3) The panel awarded Segal $18,000 in compensatory damages for an unpaid bonus but denied his remaining claims. (Id.)

The arbitrators awarded AEI compensatory damages against each of the Petitioners, reflecting unpaid balances on the promissory notes, together with pre-judgment interest and attorneys' fees "pursuant to the terms" of the promissory notes. (Id. at 3-4) The panel denied all of AEI's claims against Harrigan and Hermann for outstanding balances on their promissory notes, however, finding that

> AEI had withheld funds from the Harrigan, Herrmann, and Segal loans for related tax payments at the time of the loans. Unlike the Segal employment contract which specifically states that Segal is liable for the entire loan balance outstanding regardless of funds withheld for tax payments, the Harrigan and Herrmann employment contracts are silent on the issue. Given that AEI had withheld funds at its sole discretion and it is highly unlikely that Harrigan and Herrmann can recover those funds, the Panel deems it fair to deduct funds withheld from the outstanding Harrigan and Herrmann loan balances, leaving no net balance due on their promissory notes. The Panel also deems it fair to enforce the clear terms of Segal['s] employment contract. No funds were withheld for taxes from the Rubenstein, Landskowsky, or Cardone loans and accordingly it is not an issue on the net amount due on their promissory notes. All other AEI claims against Harrigan and Herrmann are denied.

(Id. at 4) The Panel denied all other requested relief. (Id.)

5

### III.  THE CROSS-MOTIONS TO VACATE AND TO CONFIRM THE AWARD

On February 4, 2013, Petitioners moved to vacate the arbitration award in New York state court. (Request for Judicial Intervention (Dkt. No. 1)) Petitioners asserted that the arbitrators (1) wrongfully excluded pertinent evidence during the proceedings; and (2) acted with manifest disregard for the law. (Pltf. Mot. to Vacate Br. (Dkt. No. 1) at 29-48) They argued that "[t]he result of the Panel's egregious misconduct was that the arbitration proceeding was fundamentally unfair so as to warrant vacatur of the Award in its entirety." (Id. at 28)

On March 6, 2013, Respondents filed a notice of removal. (Notice of Removal (Dkt. No. 1)) On May 3, 2013, Respondents cross-moved for confirmation of the arbitration award, and for post-award interest, attorneys' fees, and costs. (Dkt. No. 8)

On March 31, 2014, this Court denied Petitioners' motion to vacate and granted Respondents' motion to confirm. (Dkt. No. 17) Based on the "unambiguous language" of the promissory notes – which states that Petitioners are liable for "any and all of the holder's costs in connection with the enforcement and collection [of unpaid amounts], including without limitation any and all attorneys' fees" (Elisofon Decl. (Dkt. No. 9), Exs. 38-40) – this Court also granted Respondents "an award reflecting reasonable attorneys' fees and costs incurred in connection with the instant motions." (Id. at 34-35)

### IV.  RESPONDENTS' APPLICATION FOR FEES AND COSTS

Respondent AEI seeks $143,890 in attorneys' fees and $8,939.33 in costs. (Resp. Br. (Dkt. No. 20) at 8, 12)

Petitioners argue that AEI is entitled to either $7,641.46 or $32,353.52 in fees and costs. (Pet. Br. (Dkt. No. 23) at 12) Petitioners do not dispute the rates or hours set forth in Respondents' submission, but instead contend that (1) "this Court should . . . limit attorneys' fees

6

to the time spent in connection with confirming that much of the arbitration award dealing with the promissory notes (not in opposing Petitioners' motion to vacate the arbitration panel's dismissal of their affirmative causes of action)"; and (2) Petitioners should not be found jointly and severally liable for any award of fees and costs, but instead any award should be apportioned to each Petitioner in an amount correlating with the compensatory award obtained by Respondents against each Petitioner. (Id. at 1-3)

## DISCUSSION

### I. AEI IS ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN CONNECTION WITH THE CROSS-MOTIONS

#### A. Because Petitioners Moved to Vacate the Arbitration Award In Its Entirety, AEI Was Required to Address All of Petitioners' Arguments

In their motion to vacate, Petitioners argued that the arbitrators (1) improperly excluded relevant evidence during the proceedings; (2) acted with manifest disregard for the law in a number of respects; and (3) that as a "result of the Panel's egregious misconduct . . . the arbitration proceeding was fundamentally unfair so as to warrant vacatur of the Award in its entirety." (Pltf. Mot. to Vacate Br. (Dkt. No. 1) at 28-48) (emphasis added).

Given that Petitioners challenged the validity of the Award "in its entirety," it was necessary for Respondents to defend the Award "in its entirety." Stated another way, if Petitioners' arguments had been accepted by this Court, the entire Award – including that portion relating to the promissory notes – would have been vacated. Accordingly, it was necessary for Respondents to address all of Petitioners' arguments concerning the cross-motions, and AEI is entitled to an award reflecting the costs and reasonable attorneys' fees it incurred in responding to Petitioners' arguments.

7

### B. That AEI's Submissions Were Filed on Behalf of Both AEI and the Individual Respondents Does Not Justify a Reduction in the Attorneys' Fee Award

Petitioners argue that AEI's award should be reduced because its submissions to this Court were made both on behalf of itself and on behalf of the individual respondents. (Pet. Br. (Dkt. No. 23) at 3, 8-10) There is no factual or legal basis for this argument.

The same law firm represented AEI and the individual respondents, and it is undisputed that AEI incurred and paid all of the fees related to the cross-motions. See Elisofon Decl. (Dkt. No. 19) ¶¶ 7-10. It is likewise undisputed that all of the legal arguments made by Respondents' counsel applied with equal force to AEI and the individual respondents. Stated another way, all of the work performed on the cross-motions would have been necessary whether or not the individual respondents were parties to this action. Accordingly, the attorneys' fee award will not be reduced to reflect the fact that Respondents' submissions were made on behalf of both AEI and the individual respondents.

### II. CALCULATION OF A REASONABLE ATTORNEYS' FEE AWARD

Respondent AEI seeks $143,890 in attorneys' fees. (Resp. Br. (Dkt. No. 20) at 8, 12) The proposed fee award reflects the work of three Herrick, Feinstein LLP ("Herrick") partners and three associates, along with one paralegal. (Elisofon Decl. (Dkt. No. 19) ¶ 12; id. Ex. A at 16)

#### A. Applicable Law

"As a general matter of New York law, . . . when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable." F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250,

1263 (2d Cir. 1987); see Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992) (same). "However, notwithstanding th[is] general proposition . . . , the amount to be awarded as 'an attorney's fee is within the discretion of the court.'" Terra Energy & Resources Technologies, Inc. v. Terralinna Pty. Ltd., No. 12 Civ. 1337 (KNF), 2014 WL 6632937, at *4 (S.D.N.Y. Nov. 24, 2014) (quoting Gamache v. Steinhaus, 7 A.D.3d 525, 527 (2d Dept. 2004)). Indeed, "'[w]hen determining a fee award based upon a contractual attorneys' fees agreement between the parties . . . courts have "broad discretion" and need not follow a specific formula. As such, the Court need not pore over every hour and minute billed but only make adjustments for any unnecessary, unreasonable, or excessive fees.'" Union Cent. Life Ins. Co. v. Berger, No. 10 Civ. 8408 (PGG), 2013 WL 6571079, at *2 (S.D.N.Y. Dec. 13, 2013) (quoting Clarendon Nat. Ins. Co. v. Advance Underwriting Managers Agency, Inc., No. 06 Civ. 15361 (BSJ), 2011 WL 6153691, at *2 (S.D.N.Y. Dec. 8, 2011) (quoting U.S. Fidelity & Guaranty Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 74 (2d Cir. 2004))).

In determining whether a requested fee award is reasonable, the starting point is the calculation of the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008). This "initial estimate" is calculated by multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "In determining a reasonable rate, a court 'may rely on its own knowledge of comparable rates charged by lawyers in the district.'" Merck Eprova AG v. Brookstone Pharm., LLC, No. 09 Civ. 9684 (RJS), 2013 WL 3146768, at *1 (S.D.N.Y. June 10, 2013) (quoting Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004)). In exercising its discretion, the Court must "bear in mind all of the case-specific variables that we and other courts have identified as relevant,"

9

including "[t]he reasonable hourly rate . . . a paying client would be willing to pay," "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190 (emphasis in original).  Courts also consider "the complexity and difficulty of the case, . . . the resources required to prosecute the case effectively. . . , the timing demands of the case, . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation." Id. at 184.

"Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as the extent of [movant's] success in the litigation." Robinson v. City of New York, No. 05 Civ. 9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009).  A court need not "'become enmeshed in a meticulous analysis of every detailed facet of the professional representation'" to determine the proper award, Seigal v. Merrick, 619 F.2d 160, 164 n.8 (2d Cir. 1980) (quoting Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976)), nor should "[a] request for attorney's fees . . . result in a second major litigation." Hensley, 461 U.S. at 437.  The burden is ultimately on the movant to demonstrate the reasonableness of the hours spent and rates asserted.  See id.

While a court may adjust the presumptively reasonable fee amount, there remains throughout the fee determination process "[a] strong presumption that [this initial calculation] . . . represents a 'reasonable' fee." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986); accord Lunday, 42 F.3d at 134.

**B.  Hourly Rates**

Herrick represented AEI in this matter.  (Elisofon Decl. (Dkt. No. 19) ¶ 1)  AEI seeks $143,890 in attorneys' fees, reflecting 391 hours of work performed by Herrick.  (Id. ¶ 9,

13-16) The amount billed by Herrick also reflects a $5,000 "courtesy allowance." (Id. ¶ 15) Overall, the average hourly rate charged by Herrick is $368.

Two partners – Howard Elisofon and Carol Goodman – and three associates – Heather Robinson, Keven Clauson, and Robert Sanzillo – along with paralegal Robin Richards account for nearly all of the hours billed.[3] (Id. ¶ 12) Partner billings amount to 82 hours, at an hourly rate of $525. The three associates billed 284 hours; Herrick billed each associate's time at the same overall "blended" rate of $350 per hour. See id. ¶ 12; id. Ex. A at 16; Resp. Br. (Dkt. No. 20) at 11. The paralegal billed 25 hours at an hourly rate of $275. (Id.)

The determination of reasonable hourly rates is a factual issue committed to the court's discretion, and is typically defined as the market rate a "reasonable, paying client would be willing to pay."[4] Arbor Hill, 522 F.3d at 184. "[D]istrict courts should use the 'prevailing [hourly rate] in the community' in calculating . . . the presumptively reasonable fee." Id. at 190 (second alteration in original). "[T]he 'community' for purposes of this calculation is the district where the district court sits." Id. (citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983)). More specifically, courts should consider the market rates "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)). In determining what rates are reasonable, a court may also rely on evidence as to the rates counsel typically charges, Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005), and "its own knowledge of comparable rates charged by lawyers in the district." Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (citing

---

[3] Partner Ron Levine billed 1.5 hours. (Elisofon Decl. (Dkt. No. 19) Ex. A at 16) His billing rate is the same as that of Elisofon and Goodman – $525 per hour. (Id.)

[4] As noted above, Petitioners have not argued that Herrick's billing rates are unreasonable.

11

Ramirez v. N.Y. City Off-Track Betting Corp., No. 93 Civ. 682 (LAP), 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997)).

    Here, all of the partners are highly experienced in complex commercial litigation. Elisofon and Levine have each practiced law for more than thirty years, while Goodman has more than twenty years of experience. (Elisofon Decl. (Dkt. No. 19) Ex. E). Robinson graduated from law school in 2006; Clauson has been a member of the bar since 2011; and Sanzillo was a recent law school graduate. (Id.)

    The rates Herrick attorneys charged here are within the range of rates that have been approved by courts in this District. See, e.g., Sidley Holding Corp. v. Ruderman, No. 08 Civ. 2513 (WHP) (MHD), 2009 WL 6047187, at *26 (S.D.N.Y. Dec. 30, 2009), adopted 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010) (noting that "recent fee awards within the district reflect hourly rates in the range of $450.00 to $600.00 for experienced partners, $350.00 for senior associates, $250.00 for junior associates, and $125.00 to $170.00 for paralegals") and citing Edmonds v. Seavey, No. 08 Civ. 5646 (HB) (JCF), 2009 WL 1598794, at *2 (S.D.N.Y. June 5, 2009), aff'd, 2009 WL 2150971 (S.D.N.Y. July 20, 2009), and RBFC One, LLC v. Zeeks, Inc., No. 02 Civ. 3231 (DFE), 2005 WL 2105541, at *2 (S.D.N.Y. Sept. 1, 2005)); In re AOL Time Warner Shareholder Derivative Litigation, No. 02 Civ. 6302 (CM), 2010 WL 363113, at *13 (S.D.N.Y. Feb. 1, 2010) ("Counsel use hourly rates ranging from $90 to $250 for paralegals, from $175 to $550 for associates and other non-partner level attorneys and from $300 to $850 for partners. These rates, though relatively high, fall within the range of those commanded by leading lawyers in the Southern District, particularly those practicing at large firms or with high profiles."); see also Elisofon Decl. (Dkt. No. 19) Ex. D at 4 (National Law Journal billing survey finding that "[f]irms with their largest office in New York had the highest average partner and

associate billing rates, at $882 and $502, respectively. Similarly, TyMetrix has reported that more than 25 percent of partners at large New York firms charge $1,000 per hour or more for contracts and commercial work."). Accordingly, the Court concludes that the rates Herrick charged for its attorneys are reasonable.

As to paralegal Robin Richards's billing rate of $275 per hour, however, this Court finds that rate excessive. Fee awards in this District generally provide for paralegal rates significantly below Richards's rate. See, e.g., Lucerne Textiles, Inc. v. H.C.T. Textles Co., Ltd., No. 12 Civ. 5456 (KMW) (AJP), 2013 WL 174226, at *6 (S.D.N.Y. Jan. 17, 2013) (finding $140 hourly paralegal rate reasonable and $265 hourly rate unreasonable); N.Y.C. Dist. Council of Carpenters v. Rock-It Contracting, Inc., No. 09 Civ. 9479 (JGK) (AJP), 2010 WL 1140720, at *4 (S.D.N.Y. Mar. 26, 2010) ($125 per hour is a reasonable hourly rate for paralegal services); Sidley Holding Corp, 2009 WL 6047187, at *26 ($195 hourly rate for paralegal services is unreasonable; approving rate of $125 per hour); VFS Fin., Inc. v. Pioneer Aviation, LLC, No. 08 Civ. 7655 (GBD) (AJP), 2009 WL 2447751, at *4 (S.D.N.Y. Aug. 11, 2009) (approving $125 paralegal hourly rate). Accordingly, the paralegal rate will be reduced to $140 per hour.

### C. Staffing and Time Expended

After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. The Court will exclude any hours included in the fee application that were not "reasonably expended." Hensley, 461 U.S. at 434. As with the determination of a reasonable rate, the Court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended, and nature of the work done," New York State Ass'n for

Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and "its own familiarity with the case . . . and its experience generally."[5] Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992).

While "[t]he use of multiple attorneys . . . is not unreasonable per se," Simmonds v. N.Y.C. Dep't of Corr., No. 06 Civ. 5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008) (quoting Williamsburg Fair Hous. Comm. v. Ross-Rodney Hous. Corp., 599 F. Supp. 509, 518 (S.D.N.Y. 1984)) (alteration in original), assigning numerous attorneys to a simple and straightforward matter presents a serious risk of inefficiency, duplication, and unnecessary billing. See id. at *6-7. As the Second Circuit has recognized,

> [i]n assessing the extent of staffing and background research appropriate for a given case, a district court must be accorded ample discretion . . . . [A] trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but for the most part such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

New York State Ass'n for Retarded Children, Inc., 711 F.2d at 1146. The guiding principle to determine whether redundancy has occurred is the "degree of effort reasonably needed to prevail in the litigation." Id.; see also Sullivan v. Syracuse Hous. Auth., No. 89-CV-1205, 1993 WL 147457, at *3 (S.D.N.Y. May 3, 1993) (district court must ensure that fee award reflects only work that was "necessary to the litigation" and "a cost efficient use of co-counsel and outside counsel").

Here, although six Herrick attorneys billed time to this case,[6] the work appears to have been performed in an efficient manner and duplication of effort is not apparent. Senior

---

[5] Petitioners have not argued that the number of hours Herrick billed to this matter is unreasonable.

[6] As noted above, partner Ron Levine spent 1.5 hours reviewing a brief prepared by other attorneys and conferring with Elisofon. (Elisofon Decl. (Dkt. No. 19) Ex. A at 3, 6, 16) Given the very limited nature of Levine's involvement, this Court does not find a reduction in hours is warranted.

14

associate Robinson and junior associate Clauson performed most of the work, with a first-year associate conducting legal research. See Elisofon Decl. (Dkt. No. 19) Ex. A at 16, 29, 37; id. Ex. B at 6. These associate attorneys, along with paralegal Richards, billed approximately 80% of the 391 hours for which Respondent AEI seeks fees. The partners – who bill at a much higher rate – billed only 20% of the hours for which Respondents seek an award.

      Herrick has provided lengthy, detailed descriptions of all of the work for which AEI seeks attorneys' fees. (Id. Exs. A, B) Based on its review of these invoices, this Court finds that the total number of hours for which AEI seeks fees is reasonable under the circumstances. In addition to preparing Respondents' motion to confirm the arbitration award, Herrick was required to review a voluminous record from the arbitration proceedings in order to address the many arguments Petitioners put forth in their motion to vacate. While a motion to confirm an arbitration award is ordinarily a relatively straightforward exercise, see Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984), Petitioners' motion to vacate – which asserted numerous grounds for overturning the Award, see Pet. Motion to Vacate Br. (Dkt. No. 1) – necessitated review of the voluminous arbitration record, legal research, and preparation of papers. See Resp. Br. (Dkt. No. 20) at 11. This Court finds that the total number of hours expended by Herrick is reasonable.

* * * *

      This Court has reduced the paralegal billing rate from $275 to $140 per hour, but finds that Herrick's rates and hours are otherwise reasonable. Accordingly, AEI is entitled to a total of $140,474.50 in attorneys' fees.[7]

---

[7] Richards billed 25.3 hours. (Elisofon Decl. (Dkt. No. 19) Ex. A at 16, 29, 37) At a rate of $275 per hour, this amounts to $6,957.50. At a rate of $140 per hour, the total for the 25.3 hours

## III. COSTS

### A. Applicable Law

AEI is also entitled to an award of costs under the terms of the promissory notes. Costs include "'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" U.S. Football League v. Nat'l Football League, 704 F. Supp. 474, 483 (S.D.N.Y. 1989) (quoting Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987)); see also Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) (providing a non-exclusive list of recoverable costs, including "photocopying, travel, and telephone costs"); Anderson v. City of New York, 132 F. Supp. 2d 239, 245-47 (S.D.N.Y. 2001) (allowing recovery for service, filing, and photocopying expenses, witness fees, and computerized legal research costs). Recovery is not permitted for costs associated with routine office overhead. See Kuzma, 821 F.2d at 934 ("[N]onrecoverable routine office overhead . . . normally must be absorbed within the attorney's hourly rate.")

### B. Analysis

AEI seeks a costs award of $8,939.33, reflecting court fees, filing fees, legal research expenses, attorney travel expenses, and printing and binding fees. (Resp. Br. (Dkt. No. 20) at 12) All of these expenses are properly included in a costs award. See, e.g., Anderson, 132 F. Supp. 2d at 245-47. In support of its application, AEI has submitted invoices itemizing each of the costs. (Elisofon Decl. (Dkt. No. 19) Ex. A at 16, 29-30, 37-38; id. Ex. B at 7) Petitioners have not objected to any of these costs, and this Court finds them reasonable. Accordingly, $8,939.33 in costs is allowed.

---

of work is $3,542, which amounts to a difference of $3,415.50. Accordingly, this Court's award of $140,474.50 reflects a $3,415.50 reduction in the requested fee amount of $143,890.

16

## IV. JOINT AND SEVERAL LIABILITY

### A. Applicable Law

Petitioners argue that this Court should not hold them jointly and severally liable for the award of attorneys' fees and costs, but instead should calculate a fee and costs award as to each Petitioner, based on the amount the arbitrators awarded against that Petitioner. (Pet. Br. (Dkt. No 23) at 11)

"The allocation of fee liability is a matter committed to the district court's discretion." Koster v. Perales, 903 F.3d 131, 139 (2d Cir. 1990) (partially abrogated on other grounds by Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598 (2001)) (citing Hensley, 461 U.S. at 437). In determining how to allocate attorneys' fees, "district courts have appropriately considered a variety of factors . . . including the relative culpability of the parties . . . and the proportion of time spent litigating against each defendant." Id. "[T]he district court may allocate the fee award between the responsible parties, . . . or it may hold the responsible parties jointly and severally liable for the fee award. The only limitation [on joint and several liability] is . . . the pre-existing background of substantive liability rules." Id. The court "should 'make every effort to achieve the most fair and sensible solution that is possible.'" Id. (quoting Grendel's Den Inc. v. Larkin, 749 F.2d 945, 960 (1st Cir. 1984)). Accordingly, "although apportionment may in some cases be a more equitable solution, there is no rule in this circuit that requires it whenever possible." Id.

### B. Analysis

Joint and several liability is appropriate here. The costs associated with responding to Petitioners' motion to vacate cannot be split up and apportioned among the Petitioners. The motion was filed on behalf of all of the Petitioners, and the arguments made in

17

this motion were made on behalf of all of the Petitioners. Accordingly, the "relative culpability" or responsibility of the Petitioners for the fees and costs AEI incurred is the same. See id.

While Petitioners argue that the promissory notes do not "make[] each Petitioner liable for attorneys' fees and costs incurred by AEI in attempting to collect monies owed by other Petitioners" (Pet. Br. (Dkt. No. 23) at 10-11) (emphasis in original), this point is irrelevant. Because the motion to vacate was filed on behalf of all Petitioners, and because the same arguments were made on behalf of all Petitioners, AEI's attorneys' fees and costs would have been the same regardless of how many individuals joined this suit. Accordingly, Petitioners will be jointly and severally liable for the attorneys' fee and costs award.

## CONCLUSION

Petitioners are directed to pay Respondent AEI $140,474.50 in attorneys' fees and $8,939.33 in costs.[8] The Clerk of the Court is directed to enter judgment and to close this case.

Dated: New York, New York
       February 10, 2015

                    SO ORDERED.

                    _____
                    Paul G. Gardephe
                    United States District Judge

---

[8] Respondents request that the Court order Petitioners to make payment "within fourteen days of this Court's order." (Resp. Br. (Dkt. No. 20) at 12) Petitioners oppose this request, however, and none of the legal authority cited by Respondents establishes that this Court is authorized to grant such relief. See Resp. Reply Br. (Dkt. No. 22) at 8. In Adams v. New York State Educ. Dep't, 630 F. Supp. 2d 333, 336 (S.D.N.Y. 2009), for example, defendants "withdrew their objections and voluntarily consent[ed]" to an order requiring payment within 30 days. Id. Likewise in S.E.C. v. Northshore Asset Management, LLC, No. 05 Civ. 2192 (RO), 2006 WL 1642915, at *2 (S.D.N.Y. June 14, 2006), the court did not require payment of an attorneys' fee award within a set time period. Instead, the court ordered that a $2500 sanction be paid within 60 days. Id. Finally, in Charles Labs, Inc. v. Banner, 79 F.R.D. 55, 58 (S.D.N.Y. 1978), the court imposed a $250 sanction for discovery abuse and required that payment be made within 30 days. Id. The instant case involves a contractual right to attorneys' fees, however, and not a court-imposed sanction. Because Respondents have provided no supporting authority for their request that the Court require payment within fourteen days, Respondents' application is denied.

19